IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MICHAEL D. YATES,

                                        Petitioner,

            vs.                              Civil Action No.
                                             9:03-CV-1057 (LEK/DEP)

ISRAEL RIVERA, Superintendent,
Washington Correctional Facility

                                        Respondent.

_____

APPEARANCES:                    OF COUNSEL:

FOR PETITIONER:

THERESA M. SOUZZI               THERESA M. SOUZZI, ESQ.
LAW OFFICE
480 Broadway, Suite 218
Saratoga Springs, NY 12866

FOR RESPONDENT:

HON. ANDREW M. CUOMO            G. LAWRENCE DILLON, ESQ.
Attorney General of the         Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

 REPORT AND RECOMMENDATION

Petitioner Michael Yates, a former New York State prison inmate as a result of a 2000 criminal conviction for assault, reckless endangerment, and endangering the welfare of a child, has commenced this proceeding seeking federal habeas relief under 28 U.S.C. § 2254.  In his petition, Yates argues that his conviction was the product of violation of rights guaranteed to him under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  Petitioner asserts five grounds in support of his request for the issuance of a writ of habeas corpus, three of which implicate evidentiary rulings by the trial court.  Respondent opposes the petition and challenges each of the grounds on the merits, arguing, in large part, that petitioner's claims are not cognizable for review in this proceeding.

Because I find, applying the requisite deferential standard, that the claims asserted by Yates are without merit, I recommend that his petition be denied.

I.      BACKGROUND

Petitioner's conviction stems from an incident which occurred on February 23, 1999 at a Fulton County residence which he shared with his

2

girlfriend, Faith Owen – the mother of their then two-week old son, Adrean

Yates.  Record on Appeal at pp. 195-96.[1]  On that date, after leaving the

child in the petitioner's care and going to sleep in a bedroom at the

residence, Owen awoke at approximately two o'clock in the morning to

find the petitioner seated in the living room, with the baby lying motionless

on his lap.  RA 77.

Petitioner placed an emergency 911 call at approximately 2:25 am,

reporting that something was wrong with his son, Adrean.  RA 197-202.

In recounting the incident during that call, Yates stated that he had left the

room for a moment, and that while he was gone the baby apparently fell

off of a sofa and onto the floor.  *Id.*  An ambulance and fire department

personnel from Caroga Lake were dispatched to respond to the

emergency call.  RA 203-06.  Baby Adrean was thereafter transported by

ambulance to the Nathan Littauer Hospital Emergency Room for

treatment.  *Id.*

Once at the hospital, Baby Adrean underwent a CT Scan, revealing

bleeding in his brain.  RA 13-20.  The baby was subsequently transported

---

[1]     References to the record on appeal, filed by the District Attorney in
connection with petitioner's direct appeal of his state court conviction, will be made as
"RA ___."

by helicopter to the Albany Medical Center where he was treated by Dr.

Raymond Walsh, a pediatrics intensive care physician, for a subdural

hematoma, two rib fractures, retinal hemorrhages in the back of both

eyes, and a right adrenal hemorrhage, or bleeding in the adrenal gland.[2, 3]

RA 96-97.

Fulton County Sheriff's Department Investigators Steve Gordon and

Reginald Knapp were sent to Albany Medical Center to conduct an

investigation regarding the matter.  RA 207-10.  While initially repeating

the version given earlier to 911 dispatchers regarding the baby having

fallen off the couch, *see* RA 34-35, upon further questioning Yates

admitted that he had lost his temper, forcibly held a bottle to the baby's

mouth, tried to hold the baby's mouth shut, dropped the baby onto the

couch, picked up the baby and shook him by his rib cage, and tossed the

baby into a baby swing, causing the baby's head to snap.  RA 35-38.

---

[2]       In his memorandum, petitioner characterizes Dr. Raymond Walsh as a
radiologist.  *See* Petitioner's Memorandum (Dkt. No. 2) at pp. 3, 6 (unnumbered).  The
evidence adduced at trial, however, reflects that he is in fact certified in the fields of
pediatrics and pediatric critical care.  RA 90-92.

[3]       Dr. Walsh testified at trial regarding the baby's injuries.  RA 90-184.  Dr.
Walsh opined that the baby's injuries were consistent with a known phenomenon
referred to as "shaken baby syndrome" and, utilizing a computer-generated video, was
permitted to depict for the jury how such injuries as those suffered by Baby Adrean can
occur when a baby is shaken.  RA 98-104.

Petitioner's confession was subsequently reduced to a writing, which he then signed and initialed.[4]  RA 44-50.

In his trial testimony, petitioner denied having shaken or dropped the baby.  Petitioner further denied giving the written statement introduced into evidence through Officer Gordon and claimed he could not have initialed the statement, as it was his custom to use three letters when doing so, whereas only two letters appeared on the disputed document.[5] RA 211-12.

II.    PROCEDURAL HISTORY

    A.    State Court Proceedings

Petitioner was indicted by a Fulton County grand jury in March, 1999 and charged with assault in the first degree, in violation of N.Y. Penal Law § 120.10(3); reckless endangerment in the first degree, in violation of N.Y. Penal Law § 120.25; and endangering the welfare of a child, in violation of N.Y. Penal Law § 260.10(1).  RA 1-3.  Following a jury trial held in

---

[4]      Efforts by the defense to call an expert witness to testify regarding the effects prescription medications taken by the petitioner could have had upon his making an incriminating statement to the police apparently were rejected by the trial court, which noted that the defendant had not provided notice of his intention to call such an expert as required under N.Y. Criminal Procedure Law § 250.10.  RA 78-84, 185-93.

[5]      During cross-examination, petitioner was confronted with other documents initialed by him, using only two letters.  RA 324-30.

connection with those charges, petitioner was convicted on all counts, and thereafter sentenced principally to concurrent terms of seven years, two and one third to seven years, and one year, respectively, on the three counts of conviction.  RA 293-308.

Following his conviction but prior to sentencing, petitioner filed a motion to set aside the jury's verdict, pursuant to N.Y. Criminal Procedure Law § 330.30, and a renewed motion seeking a trial order of dismissal under N.Y. Criminal Procedure Law § 290.10.  RA 227-41.  The focus of petitioner's post-trial motion was twofold.  Initially, petitioner challenged the expert testimony given by Dr. Walsh, contending that his testimony was based on hearsay, in the form of records and reports which he did not prepare.  RA 227-28.  The second portion of petitioner's motion sought to have his conviction vacated based upon new evidence, in the form of recanted testimony from his girlfriend, Faith Owen.  While initially stating that she was asleep in a separate bedroom and had heard nothing throughout the course of the incident involving Baby Adrean, in an affidavit given to support petitioner's post-trial motion Ms. Owen stated, in conflict with several prior sworn statements and testimony provided both at trial and in a separate but related Family Court proceeding, that during the

6

course of the incident she was asleep on the couch in the same room where Baby Adrean was injured, but did not hear or see anything.  RA 236-37.

In light of the nature of the allegations asserted by the petitioner in his post-trial motions, particularly in view of the fact that they entailed claims of misconduct against Faith Owen's former attorney as well as the assistant district attorney involved in prosecuting the petitioner, the trial court conducted a hearing in connection with those applications.  *See* RA 218.  Following that hearing, County Court Judge Richard C. Giardino issued a decision and order, dated July 17, 2000, denying both motions. RA 215-16.  In his decision, Judge Giardino found that Owen's recanted testimony was both not credible and at odds with prior sworn statements and testimony, as well as inconsistent with petitioner's own trial testimony. RA 220-21.  Turning to Dr. Walsh's testimony, and applying governing state court jurisprudence regarding the proper foundation for expert testimony, Judge Giardino concluded that because the materials relied upon by Dr. Walsh were of a nature typically relied upon by others in the profession, Dr. Walsh's opinion testimony was properly admitted.  RA 222-26.

7

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Third Department.  In his appeal, Yates argued that 1) the evidence at trial was insufficient to support his conviction, which was impermissibly supported by double hearsay, in violation of his right of confrontation; 2) expert testimony elicited by the prosecution regarding the shaken baby syndrome was unsupported and prejudicial; 3) the trial court erred in refusing to set aside the jury's verdict based upon the proffered, newly discovered evidence; 4) petitioner's right to due process was violated when his sentence was enhanced, based upon a finding that he had committed perjury; and 5) the trial court erred in refusing to allow Yates to present testimony from a pharmacological expert regarding the effects of his medications on the voluntariness of his confession.  Rejecting each of these arguments on the merits, the Third Department unanimously affirmed petitioner's conviction by decision rendered on January 31, 2002.  *People v. Yates*, 290 A.D.2d 888, 736 N.Y.S.2d 798 (3d Dep't 2002).  Leave to appeal further to the New York Court of Appeals was subsequently denied on May 21, 2002.  Petition (Dkt. No. 1) at 3.  To date, petitioner has not commenced any state court proceedings collaterally challenging his conviction.

8

B.    Proceedings In This Court

Petitioner commenced this proceeding on August 25, 2003.  *See* Petition (Dkt. No. 1).  In his petition, Yates asserts that 1) the trial evidence was insufficient, as a matter of law, to support the jury's verdict; 2) the trial court erred by allowing the prosecution to present evidence of shaken baby syndrome; 3) petitioner's motion to set aside the verdict should have been granted by the trial court, due to the existence of newly discovered evidence; 4) the sentence imposed by the trial court was unduly harsh and excessive; and 5) the trial court erred in refusing to allow the defense to call rebuttal witnesses.  Appropriately named as respondent in Yates' petition is Israel Rivera, the superintendent of the prison facility in which the petitioner was confined at the time of commencement.[6]

On December 18, 2003, represented by the New York State Attorney General, respondent Rivera filed a submission in response to the petition, accompanied by the majority of the state court records associated

---

[6]    According to information obtained from publicly available New York State Department of Correctional Services ("DOCS") records, petitioner was released from DOCS custody on February 6, 2006.  *See* http://nysdocs/lookup.docs.state.ny.us. Plaintiff's release, however, does not render his habeas petition moot in light of the ongoing, collateral consequences which are presumed to result from his conviction. *Spencer v. Kemna,* 523 U.S. 1, 12, 118 S. Ct. 978, 985 (1998).

with Yates' prosecution.  *See* Dkt. No. 7.  This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) of the Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Standard Of Review

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about significant new limitations on the power of a federal court to grant habeas relief to a state court prisoner under 28 U.S.C. § 2254.  Under the AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001)(quoting § 2254(e)(1)) (internal quotes omitted). Significantly, a federal court may not grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court
> proceedings unless the adjudication of the claim –
>
>     1) resulted in a decision that was

10

> contrary to, or involved an
> unreasonable application of, clearly
> established Federal law, as determined
> by the Supreme Court of the United
> States; or
>
> 2) resulted in a decision that was
> based on an unreasonable
> determination of the facts in light of the
> evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d); *see also Thibodeau v. Portuondo*, __ F.3d __, No.

05-0149, 2007 WL 1374755, at *2 (2d Cir. May 11, 2007); *Noble v. Kelly*,

246 F.3d 93, 98 (2d Cir.), *cert. denied*, 122 S. Ct. 197 (2001); *Boyette*,

246 F.3d at 88.  When applying this test, the Second Circuit has noted

that

> [u]nder AEDPA, we ask three questions to
> determine whether a federal court may grant
> habeas relief: 1) Was the principle of Supreme
> Court case law relied upon in the habeas petition
> "clearly established" when the state court ruled? 2)
> If so, was the state court's decision "contrary to"
> that established Supreme Court precedent? 3) If
> not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v.*

*Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000).

Because the AEDPA's restriction on federal habeas power was

11

premised in no small part upon the duty of state courts to uphold the

Constitution and faithfully apply federal laws, the AEDPA's exacting

review standards apply only to federal claims which have been actually

adjudicated on the merits in the state court.  *Washington v. Schriver*, 255

F.3d 45, 52-55 (2d Cir. 2001).  Specifically, as the Second Circuit

explained in *Sellan v. Kuhlman*, "[f]or the purposes of AEDPA deference,

a state court 'adjudicate[s]' a state prisoner's federal claim on the merits

when it (1) disposes of the claim 'on the merits,' and (2) reduces its

disposition to judgment."  261 F.3d 303, 312 (2001).  Significantly, the

Second Circuit further held that when a state court adjudicates a claim on

the merits, "a federal habeas court must defer in the manner prescribed by

28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim –

*even if the state court does not explicitly refer to either the federal claim or*

*to relevant federal case law.*"  *Id.* (emphasis added).[7]

When a state court's decision is found to be decided "on the merits",

that decision is "contrary to" established Supreme Court precedent if it

---

[7]      In his opinion in *Sellan*, Chief Judge Walker acknowledged that
enlightenment in state court decisions as to the manner of disposition of federal claims
presented would greatly enhance a federal court's ability, on petition for habeas review,
to apply the AEDPA deference standard.  *Sellan*, 261 F.3d at 312.  He noted, however,
that a state court's failure to provide such useful guidance does not obviate a federal
court's duty to make the analysis and pay appropriate deference if the federal claim
was adjudicated on the merits, albeit tacitly so.  *Id.*

applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1523. Moreover, a federal court engaged in habeas review must also determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable."  *Sellan*, 261 F.3d at 315 (quoting *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521 (O'Connor, J.)).  The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error," though "the increment need not be great[.]"  *Francis S.*, 221 F.3d at 111.

B.    Sufficiency of the Evidence

The primary thrust of petitioner's first ground for requesting habeas relief is his assertion that the evidence upon which his conviction was based was legally insufficient.[8]  The essence of petitioner's evidentiary insufficiency argument is that while a statement in which he confessed to the crime was admitted into evidence, it was uncorroborated and thus cannot suffice to satisfy the constitutionally-mandated quantum of

---

[8]    Interspersed within petitioner's first ground is a claim that the testimony of Dr. Walsh was improperly admitted, both because he lacked the requisite expertise to testify and since his opinions were based upon inadmissible hearsay evidence.  This claim will be addressed elsewhere in this report and recommendation.  *See* pp. 18-25, *post.*

13

evidence required to support his conviction.

Examining the evidence at trial to determine sufficiency, the Third Department concluded that the evidence adduced sufficiently established "the seriousness of the baby's injuries and the risk of death to the child to support defendant's assault and reckless endangerment convictions. " *Yates,* 290 A.D.2d at 889, 736 N.Y.S.2d at 800 (citations omitted). The Appellate Division went on to elaborate that the evidence on which it based its finding included testimony from radiologist Eckert Schackow, in which he discussed Baby Adrean's rib fractures and subdural hemorrhaging observed when examining the baby's X-rays and CT Scans, as well as that of Dr. Raymond Walsh, the physician who treated Baby Adrean. *Id.* These findings are entitled to deference under the AEDPA.

### 1.   Clearly Established Supreme Court Precedent

The Due Process Clause of the United States Constitution protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *See Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 2787 (1979); *see also Fiore v. White*, 531 U.S. 225, 228-29, 121 S.Ct. 712, 714 (2001). In deciding a challenge to the sufficiency

of evidence presented at trial, federal courts are to determine "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt." *United States v. Powell*, 469 U.S. 57, 67, 105 S.Ct. 471, 478 (1984) (citing *Jackson*) (other citations omitted).

A convicted defendant seeking federal habeas review for sufficiency of evidence to support that conviction bears a heavy burden. *Fama v. Comm'r of Corr.Services,* 235 F.3d 804, 811 (2d Cir. 2000); *United States v. Brewer,* 36 F.3d 266, 268 (2d Cir. 1994). A petitioner making this claim is entitled to habeas relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324, 99 S. Ct. at 2791-92 (1979).  When making an analysis concerning sufficiency of the evidence, the reviewing court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama*, 235 F.3d at 811.

> 2.   Contrary To, or Unreasonable Application of, Supreme Court Precedent

A federal court sitting in habeas review must look to state law to ascertain the elements of the crime in considering whether there was sufficient evidence adduced at trial to support a jury's determination of

guilt.  *See Fama*, 235 F.3d at 811 (citing *Quartararo v. Hanslmaier*, 186

F.3d 91, 97 (2d Cir. 1999), *cert. denied*, 528 U.S. 1170, 120 S.Ct. 1196

(2000)); *Carter v. Greiner*, No. 02 CV 2797, 2004 WL 733422, at *4

(E.D.N.Y. Apr. 6, 2004) (citing *Fama*).  In New York, an individual is guilty

of first degree assault when "he [or she] recklessly engages in conduct

which creates a grave risk of death to another person, and thereby causes

serious physical injury to another person."  N.Y. Penal Law § 120.10(3).

An individual commits first degree reckless endangerment when "under

circumstances evincing a depraved indifference to human life, he [or she]

recklessly engages in conduct which creates a grave risk of death to

another person."  N.Y. Penal Law §120.25.  It is against this backdrop that

sufficiency of the evidence must be measured.

The evidence adduced at trial of Baby Adrean's injuries, including

subdural hematoma, rib fractures, and retinal hemorrhages in the back of

both eyes, *see* RA 96-97, coupled with the admission of petitioner's

confession that he had dropped the baby on a sofa, shook the baby by his

rib cage, and tossed the baby into a baby swing, *see* RA 35-38, clearly

was sufficient to convict Yates of these crimes.  I simply "'cannot say that

no reasonable jury could have found guilt beyond a reasonable doubt on

all the evidence.'"  *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y.

1996) (quoting *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981)).

Petitioner addresses one portion of his evidence sufficiency

argument to his confession.  Citing, *inter alia, United States v. Bryce,* 208

F.3d 346 (2d Cir. 2000), petitioner argues that sufficient corroboration of

the contents of his inculpatory statement was required, but lacking in this

case.  Petitioner's habeas challenge based upon the alleged lack of

corroboration of his confession ignores the fact that such an omission

implicates a matter of state law, though not necessarily one of a

constitutional dimension.  As was aptly noted by the court in *Robinson v.*

*Smith*, 530 F. Supp. 1386 (W.D.N.Y. 1982), "New York's confession

corroboration rule is a state law requirement which embodies no federal

constitutional principle."  *Robinson*, 530 F. Supp. at 1390 (citation

omitted).[9]  While doubting the existence of a categorical rule to the effect

that the Constitution requires some measure of corroboration of a

defendant's confession in every case, however reliable it may appear, I

note that petitioner's confession was amply corroborated.  It is undeniable

_____

[9]      N.Y. Criminal Procedure Law § 60.50 provides that "[a] person may not
be convicted of any offense solely upon evidence of a confession or admission made
by him [or her] without additional proof that the offense charged has been comitted."

that Baby Adrean sustained serious injuries as a result of an incident experienced while being cared for by the petitioner.  The evidence adduced at trial firmly established the severity of those injuries, requiring hospitalization and reflecting bleeding of the brain and several rib fractures.  Circumstantially, the evidence at trial also provided a sufficient nexus between petitioner's conduct and Baby Adrean's injuries.

Based upon the evidence adduced at trial, including petitioner's own confession and the medical evidence revealing that Baby Adrean suffered a subdural hematoma, two fractured ribs and retinal hemorrhaging, I conclude that petitioner has not demonstrated that the Third Department's decision rejecting Yates' evidence insufficiency claim is either contrary to, or represents an unreasonable application of, *Jackson* and its progeny.  I therefore recommend that Yates' first ground for relief be denied.

D.    Trial Court Evidentiary Rulings

Claims two and five of Yates' habeas petition, as well as a portion of his first ground, attack evidentiary rulings made by the trial court.  Specifically, petitioner contends that admission of the testimony of Dr. Walsh, Baby Adrean's treating physician, was improper because he was permitted to testify in areas beyond his expertise and to rely upon

18

inadmissable hearsay to support his opinion.  In his second claim, petitioner asserts that the trial court improperly permitted the People to offer evidence regarding the shaken baby syndrome.  Finally, in his fifth claim for relief, Yates alleges the trial court erred in refusing to allow the defense to call rebuttal witnesses to testify regarding the effects of his medication on the voluntariness of his confession.

### 1.    Applicable Standard of Review

Claimed errors by state courts are not ordinarily subject to habeas review unless they deprive a defendant of a fundamentally fair trial. *Estelle v. McGuire*, 502 U.S. 62, 72-75, 112 S.Ct. 475, 482-84 (1991).  A party is entitled to habeas relief on a claim that evidence was improperly admitted against him or her where the introduction of that evidence "so infused the trial with unfairness as to deny [the defendant] due process of law."  *Lisenba v. California*, 314 U.S. 219, 228,  62 S.Ct. 280, 286 (1941). The introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 674 (1990)).

A petitioner is also entitled to habeas relief on a claim that evidence

offered in support of his or her defense was improperly excluded, in violation of the right afforded to a criminal defendant of a meaningful opportunity to present a complete defense. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 1049 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."); *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986). The right to call witnesses and to present testimony "is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment." *Washington*, 255 F.3d at 47-48.

Only a very narrow class of evidentiary infractions violates fundamental fairness. *Id.* at 352-53, 110 S. Ct. at 674 ("'Judges . . .. are to determine only whether the action complained of . . . violates those fundamental conceptions of justice which lie at the base of our civil and political institutions . . . and which define the community's sense of fair play and decency.'") (quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S. Ct. 2044, 2048 (1977)) (internal quotations and citations omitted). When evaluating convictions on collateral habeas challenges alleging error on the part of a trial court, habeas courts historically have

20

inquired whether the error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *DeVivo v. Superintendent, Auburn Corr. Facility*, No. 02-CV-0840, 2006 WL 581145, at *18 (N.D.N.Y. March 8, 2006) (Kahn, D.J. and Peebles, M.J.) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)) (other citation omitted). Following the enactment of the AEDPA, however, it became an "open question" in the Second Circuit whether the applicable test on federal habeas review of a state trial court error remains the standard articulated in *Brecht* or an analysis of whether the state court's decision was contrary to, or an unreasonable application of *Chapman v. California*, 386 U.S. 18 (1967).[10] *DeVivo*, 2006 WL 581145, at *18 (citing *Benn v. Greiner*, 402 F.2d 100, 105 (2d Cir. 2005) (citation omitted)); *see also Brinson v. Walker*, 407 F. Supp. 2d 456, 480-81 (W.D.N.Y. 2006); *Moore v. Herbert*, No. 02 CV 0999, 2005 WL 3591815, at *3-4 (N.D.N.Y. Dec. 30, 2005) (Mordue, D.J.).

The Supreme Court's recent decision in *Fry v. Pliler*, __ S. Ct. ___, No. 06-5247, 2007 WL 1661463 (June 11, 2007), provides helpful and

---

[10] In *Chapman*, the Supreme Court articulated that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828.

long-awaited guidance regarding this constitutional question.  In *Fry*, the

Supreme Court undertook certiorari review of the issue specifically to

resolve a split among the circuits regarding "whether *Brecht* or *Chapman*

provides the appropriate standard of review when constitutional error in a

state-court trial is first recognized by a federal court."  *Fry*, 2007 WL

1661463, at *6.  The *Fry* Court held that

> in § 2254 proceedings a court must assess the prejudicial
> impact of constitutional error in a state-court criminal trial
> under the "substantial and injurious effect" standard set forth in
> *Brecht*, 507 U.S. 619, whether or not the state appellate court
> recognized the error and reviewed it for harmlessness under
> the "harmless beyond a reasonable doubt" standard set forth
> in *Chapman*, 386 U.S. 18.

*Id*.; *cf. Gutierrez v. McGinnis*, 389 F.3d 300 (2d Cir. 2004) (holding that

when a state court explicitly conducts harmless error review of a

constitutional error, a habeas court must evaluate whether the state

unreasonably applied *Chapman*).  It should be noted that the majority in

*Fry* assumed, without deciding, that the trial court had committed

constitutional error in excluding the testimony of a defense witness at the

petitioner's trial, accepting the habeas court's finding in that regard.  *Id*. at

*3 n.1.  Accordingly, whether the holding in *Fry*, and therefore use of the

*Brecht* standard, is applicable in cases where no error of constitutional

proportion is found to have been committed by the trial court remains to be determined.[11]

In the present case, the Appellate Division, Third Department did not engage in harmless error analysis in reviewing petitioner's claims alleging trial court error.  *Yates*, 290 A.D.2d at 889-90, 736 N.Y.S.2d at 800-01. Instead, the Third Department determined that petitioner's claims lacked merit, and therefore the trial court had not erred in any of the challenged rulings.  *Id.*  Based upon the Supreme Court's decision in *Fry*, I will therefore apply a harmless error analysis, utilizing the standard articulated in *Brecht*, to gauge whether any perceived constitutional error should result in the granting of habeas relief, notwithstanding the state court's failure to make such an analysis.

---

[11]     Indeed, while concurring in the applicability of *Brecht* as the proper standard of review, Justice Breyer suggested remanding the case to determine whether constitutional error existed in the first place, noting the interplay between the issue of whether a constitutional error occurred during the trial and its impact for purposes of assessing harmless error *vel non*.  *Fry*, 2007 WL 1661463, at *9 (Breyer, J., concurring in part and dissenting in part).  The majority countered that the questions presented in the controlling certiorari petition did not address such "tangential and factbound questions" as to whether constitutional error in fact existed, but instead limited review to whether *Chapman* or *Brecht* provides the governing standard.  *Id.* at *6 (Scalia, J.).

2.      Consideration of Yates' Claims

(i)      Testimony of Dr. Walsh

According to petitioner, the trial court improperly permitted Dr. Walsh, who Yates characterizes as a radiologist, to testify regarding the cause and extent of the injuries sustained by Baby Adrean, as these topics are outside his realm of expertise.  Yates also claims that Dr. Walsh's testimony was improperly based on test results not entered into evidence.  The Third Department determined that Dr. Walsh's testimony was based on his personal examination and treatment of Baby Adrean, and he properly based his opinion on material outside the record given that the test results were the type to be reasonably relied upon by experts in the field in formulating their professional opinions.  *Yates*, 290 A.D.2d at 889, 736 N.Y.S.2d at 800.

Under New York law, expert testimony is admissible if the trial court exercises its discretion and concludes that such testimony would clarify a technical or professional issue beyond the ken of the average juror. *Reyes v. Artuz*, No. 99-CV-801, 2000 WL 1804706, at *3 (E.D.N.Y. Dec. 5, 2000) (citing *People v. Hill*, 85 N.Y.2d 256, 261, 624 N.Y.S.2d 79, 81 (1995) (internal citation omitted)).  Petitioner's characterization of Dr.

Walsh as a radiologist with no experience to testify regarding the baby's medical condition is simply incorrect.  As reflected in the state court records, Dr. Walsh in fact is certified in the arenas of pediatrics and pediatric critical care, *see* RA 90-92, was Baby Adrean's treating physician, and therefore was the most knowledgeable medical authority available to address Baby Adrean's injuries.  As the Third Department observed, Dr. Walsh's reliance on test results not on the record is of little consequence, given that those results facilitated his treatment of the baby and therein are inherently valid.

Accordingly, petitioner's mischaracterizations of the record have failed to convince me that an error under New York law was committed, much less that petitioner's due process rights were abridged.  Assuming, *arguendo*, that the trial court's ruling in admitting Dr. Walsh's testimony was error, I nonetheless conclude that it did not have a substantial and injurious effect or influence in determining the jury's verdict, particularly in view of petitioner's confession and the nature of the victim's injuries.

(ii)    Testimony Regarding Shaken Baby Syndrome

Yates argues that the trial court violated his constitutional right to a fair trial by allowing the admission of evidence regarding shaken baby

syndrome.  Petitioner alleges that the prosecution failed to demonstrate any facts or evidence that the infant victim suffered an injury consistent with shaken baby syndrome and that the trial court erred by not conducting a *Frye* hearing prior to the admission of a computer-generated video demonstrating the mechanics of shaken baby syndrome, to probe the issue of acceptance among experts of the opinion testimony adduced.[12]  Petitioner's Memorandum (Dkt. No. 2) at pp. 9-10 (unnumbered).

Addressing the acceptance among the scientific community of the challenged testimony, the Third Department noted that shaken baby syndrome is no longer a novel scientific theory.  *See In re Antoine J.,* 185 A.D.2d 925, 926, 587 N.Y.S.2d 13, 14 (2d Dep't 1992).  Given this fact, the Appellate Division found nothing improper in the trial court's failure to conduct a *Frye* hearing.  *Yates*, 290 A.D.2d at 890, 736 N.Y.S.2d at 801

---

[12]   In *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923), the District of Columbia Circuit held that before expert scientific testimony may be received the court must determine that "the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs."  293 F. at 1014.  Although the *Frye* test has been superceded in federal courts by Federal Rule of Evidence 702, *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588-89, 113 S. Ct. 2786, 2794 (1993), it remains the applicable standard in New York courts.  *Li v. Phillips*, 358 F. Supp. 2d 135, 142 & n.2 (E.D.N.Y. 2005) (citing *People v. Wesley*, 83 N.Y.2d 417, 611 N.Y.S.2d 97 (1994)).

(citing *People v. Wesley*, 83 N.Y.2d 417, 426, 611 N.Y.S.2d 97 (1994)).

Moreover, Yates has not demonstrated that the video, assuming *arguendo* that it was improperly admitted, was so extremely unfair that its admission had a substantial and injurious effect on the jury's verdict. As the Appellate Division noted, the trial court permitted the introduction of the video solely to assist the jury in understanding the concept of shaken baby syndrome. *Yates*, 290 A.D.2d at 890, 736 N.Y.S.2d at 801. The trial court gave limiting instructions to that effect, both before and after the jury viewed the video, repeatedly warning the jury to not to consider the video in determining what actually happened to petitioner's son, and gave defense counsel the opportunity to conduct *voir dire* regarding the video. *Id.* In light of the trial court's discretion to determine whether the value of the evidence outweighs its potential for prejudice, based on the nature of the proof and the context in which it was offered, the Third Department found that the trial court did not err by permitting Dr. Walsh to present the video to the jury. *Yates*, 290 A.D.2d at 889-90, 736 N.Y.S.2d at 801.

In this case, as the Third Department held, petitioner has failed to show that the trial court's admission of this evidence was erroneous under controlling state evidentiary standards, let alone an error of constitutional

27

magnitude.  *See Yates*, 290 A.D.2d at 889-90, 736 N.Y.S.2d at 801*.*  Once again, however, even assuming error, it was harmless under *Brecht* since there appears to have been ample support for petitioner's conviction, in the form of petitioner's confession and Dr. Walsh's testimony as to Baby Adrean's injuries, which were shown to be consistent with shaken baby syndrome.

(iii)   <u>Rebuttal Witnesses</u>

In his fifth ground for habeas relief, petitioner complains that the county court erred by precluding him from presenting rebuttal expert witnesses regarding the effect of his medications on his ability to give a voluntary statement to police given that he failed to provide proper notice of the witnesses in accordance with New York criminal procedure law.   As a result, Yates contends his fundamental constitutional right to assert a defense and his right to a fair trial were violated.

The right of an accused to present relevant testimony in his or her defense, while fundamental, is subject to limitation; judges retain the discretion to exclude evidence that is repetitive, marginally relevant, or that poses an undue risk of harassment, prejudice or confusion.  *Crane*, 476 U.S. at 689-90, 106 S. Ct. at 2146.  Whether the excluded evidence

28

was material determines whether a defendant was deprived of a fundamentally fair trial.  *Rosario v. Kuhlmann*, 839 F.2d 918, 925 (2d Cir. 1988).  In this regard, "the determinative question" is "'whether the omitted evidence would have created reasonable doubt'", which otherwise would not have existed.  *Ramchair v. Conway*, No. 04 CV 4241, 2005 WL 2786975, at *16 (E.D.N.Y. Oct. 26, 2005) (quoting *Wade v. Mantello*, 333 F.3d 51, 58 (2d Cir. 2003)) (other citations omitted).

In this instance, I cannot say that the trial court's denial of petitioner's request to call rebuttal witnesses created reasonable doubt that did not otherwise exist so as to deprive him of a meaningful opportunity to present a complete defense.  The proposed testimony of the precluded witnesses addressed Yates' alleged mental state at the time of his confession to the police, and did not address the issue central and material to the jury – that is, petitioner's mental state at the time the crime was committed.  In any event, given the other, overwhelming evidence against him, as previously discussed, this evidentiary ruling, even if erroneous, was not so material to Yates' guilt as to have had a substantial effect on the verdict.  I therefore recommend that this ground of the petition be denied in its entirety.

29

E.     Recanted Testimony

In his third ground for relief, petitioner challenges the prosecution's reliance upon the testimony of Faith Owen, arguing that it was perjured and subsequently recanted, thereby denying Yates a fair trial and due process of law.  Petitioner's Memorandum (Dkt. No. 2) at pp. 11-13 (unnumbered).  In support of this claim, Yates cites a sworn affidavit, in which Owen declared that she had lied in her initial statements to police and in her testimony at trial, by claiming that she was asleep in the bedroom at the time of the incident.  Owen later recanted that portion of her testimony and claimed, both in her affidavit and testimony given at the evidentiary hearing conducted by the trial court, to have been asleep on the couch in the living room, less than a foot from where the petitioner and their child were located at the relevant times.

This argument was presented to the trial court in petitioner's section 330.30 motion which alleged, in part, that the prosecution knowingly engaged in misconduct by suborning perjury at petitioner's trial.  In opposition to that motion, District Attorney Polly Hoye, Assistant District Attorney Louise Sira, and Attorney Ellen Ross submitted sworn affidavits asserting that Owen's claims were untruthful and without support.  After

30

reviewing the claim, informed by testimony adduced during the evidentiary hearing conducted by him to address the issue, Judge Giardino unequivocally stated that he had found nothing in the evidence presented to substantiate Yates' allegations of misconduct on the part of Owen's attorney or District Attorney Hoye.[13]  RA 221.

Judge Giardino determined that even if Owen did give false testimony at trial, petitioner surely knew of that fact before or during trial. RA 220.  If, in fact, Owen was asleep on the couch in the living room with petitioner on the night in question, as now claimed, Judge Giardino reasoned, it is "virtually inconceivable" that petitioner would not have been aware of that fact.  *Id.*  Accordingly, petitioner had ample opportunity to confront and correct any fabrications made by Owen at trial.  Moreover, as Judge Giardino found, petitioner's argument that he was not aware of Owen's presence in the living room due to the medication he was taking was neither supported by the evidence nor consistent with his trial testimony.

Judge Giardino further found, assuming Yates could prove that

---

[13]    Significantly, Judge Giardino went further, expressing harsh criticism of the actions of Yates' attorney, who took Owen's affidavit at face value and failed to conduct any meaningful independent investigation into the matter, finding such conduct to border on an ethical violation in itself.  RA 221-22.

Owen had given perjured testimony, that the new evidence was not likely to have changed the outcome of the case.  Because Owen's story was at odds with her own prior sworn statements and her testimony in Family Court and in County Court as well as with petitioner's prior statements and his trial testimony, had Owen testified at trial as she did at the hearing on the motion, she likely would have hindered, rather than helped, petitioner's case because her changed testimony would likely have been disregarded as simply not credible.  RA 220-21.

The Third Department, in rejecting the claim that the County Court erred in denying petitioner's motion to set aside the verdict, noted the inherently unreliable nature of recanted testimony.  *Yates*, 290 A.D.2d at 890, 736 N.Y.S.2d at 81.  The Appellate Division further found that even assuming Owen's recanted testimony to be true, that information should have been known to the petitioner prior to trial and was unlikely to have led to a different verdict as Owen's changed testimony would have called her credibility, as well as that of the petitioner, into question.  These determinations are presumed correct unless petitioner can present clear and convincing evidence to rebut them.

32

1.    Clearly Established Supreme Court Precedent

"The Supreme Court analyzes claims for wrongful conviction based on perjured testimony under the Due Process Clause of the Fourteenth Amendment." *Drake v. Portuondo*, 321 F.3d 338, 344-45 (2d Cir. 2003) (citing *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177 (1959)). A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397 (1976); *United States v. Gallego*, 191 F.3d 156, 161-62 (2d Cir. 1999) (citation omitted), *cert. denied*, 530 U.S. 1216, 120 S.Ct. 2220 (2000)*, rev'd on other grounds*, *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).  Where, however, the government is unaware of the witness perjury at the time of trial, a federal habeas petitioner must establish that the perjured testimony was material, in which case habeas relief is warranted if "the court [is left] with a firm belief that but for the perjured testimony, [he or she] would most likely not have been convicted." *Fama*, 235 F.3d at 816.

2.    Contrary To, or Unreasonable Application of,
Supreme Court Precedent

I have carefully reviewed the materials submitted with regard to the claim of recanted, perjured testimony on the part of Faith Owen.  Having conducted that review, I concur in the trial court's finding that Owen's testimony during the evidentiary hearing was undermined by her prior statements, including sworn statements and prior testimony given at trial, consistently recounting a different version which included her sleeping in a bedroom at the relevant times.  I also agree with the Third Department's assessment that if indeed petitioner claims that Ms. Owen was not asleep in the bedroom, as she claimed at trial, but instead was asleep in the same room where the critical events occurred, this was in fact known to the petitioner at a time when the matter could have been addressed at trial, either through cross-examination of the witness or through the petitioner's own trial testimony.  In sum, I find no basis to conclude that the Third Department's determination regarding newly discovered evidence was either contrary to or represented an unreasonable application of clearly established Supreme Court precedent.  Since Yates has not provided this court with any basis upon which to conclude that Judge Giardino's decision denying his motion was either contrary to, or

34

constituted an unreasonable application of *Agurs*, I recommend that the third ground in the petition be denied.

### F.   Prosecutorial Misconduct

_____Embedded within petitioner's third ground is a claim of prosecutorial misconduct. In essence, petitioner maintains that the prosecution in this case knew, or at a minimum should have known, of Ms. Owen's alleged perjury and that this possibility evidences the denial of a fair trial.[14]

In its post-trial decision the trial court found no basis to credit petitioner's claim of prosecutorial misconduct based upon the claim that fabricated testimony was presented at trial with knowledge of the prosecution.[15] A careful review of the petitioner's brief to the Third Department and that court's determination reveals that while the misconduct claim was plainly presented to the trial court, though resoundingly rejected, petitioner did not pursue that claim in his direct

---

[14]      The appropriate standard of review of a prosecutorial misconduct claim alleged in a habeas corpus petition is whether the prosecution engaged in "egregious misconduct ... amounting to a denial of constitutional due process rights." *Blissett v. Lefevre,* 924 F.2d 434, 440 (2d Cir. 1991). To warrant habeas relief, the prosecutorial misconduct must cause the defendant "substantial prejudice" by "'so infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process.' " *United States v. Shareef,* 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471 (1986)).

[15]      *See* Petitioner's Memorandum (Dkt. No. 2) at pp. 11-13 (unnumbered); *see also* RA 221-22.

appeal.

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies, or establish either an absence of available state remedies or that such remedies cannot adequately protect his or her rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994), *cert. denied*, 515 U.S. 1118, 115 S.Ct. 2269 (1995).  The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  "Comity concerns lie at the core of the exhaustion requirement." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005).  Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Id.*  "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye,* 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "'fairly presented'" to the state courts. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971)). A claim has been "fairly presented" if the state courts are apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192.

When a claim has never been presented to a state court, a federal court may find that there is an absence of available state corrective process under § 2254(b) "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (federal court may address merits of a habeas petition containing unexhausted claims where there is no further state proceeding for petitioner to pursue or where further pursuit would be futile), *cert. denied*, 532 U.S. 943, 121 S.Ct. 1404 (2001). As such, I must determine whether it would be futile for petitioner to present the newly-asserted

theory regarding prosecutorial conduct based on Owen's recanted testimony.

Petitioner cannot now file an appeal with the Third Department in order to advance his claim regarding prosecutorial misconduct, since in New York a defendant is "entitled to one (and only one) appeal to the Appellate Division." *See Aparicio*, 269 F.3d at 91. Moreover, since "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal," *id.* (citing CPL § 440.10(2)(c)), petitioner could not now properly raise this claim, which is based upon the record, in an Article 440 motion. *Aparicio*, 269 F.3d at 91; *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436 (1995). This claim is therefore "deemed exhausted" for purposes of petitioner's habeas application. *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000); *Senor v. Greiner*, No. 00-CV-5673, 2002 WL 31102612, at *10 (E.D.N.Y. Sept. 18, 2002).

Although petitioner's prosecutorial misconduct claim is "deemed exhausted," it is also procedurally defaulted. *See Aparicio*, 269 F.3d at 90, 96. Accordingly, a federal court may not engage in habeas review of

38

the claim unless the petitioner demonstrates either 1) both good cause for and actual prejudice resulting from his procedural default, or 2) that the denial of habeas relief would leave unremedied a fundamental miscarriage of justice. *Fama*, 235 F.3d at 809; *Garcia v. Lewis*, 188 F.3d 71, 76-77 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs*., 44 F.3d 121, 126 (2d Cir. 1995).  Under this second exception, which is both exacting and intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[,]" *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986); *see also House v. Bell*, No. 126 S. Ct. 2064, 2076 (2006); *Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994), "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'"  *Murray*, 477 U.S. at 495, 106 S. Ct. at 2649 (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 1576 (1982)).

To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule. *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S.Ct. 2546, 2566-67 (1991) (citing

*Murray*, 477 U.S. at 488, 106 S. Ct. at 2645); *Restrepo v. Kelly*, 178 F.3d

634, 639 (2d Cir. 1999) (citing, *inter alia*, *Coleman*).   Examples of such

external mitigating circumstances can include "interference by officials,"

ineffective assistance of counsel, or that "the factual or legal basis for a

claim was not reasonably available" at trial or on direct appeal.[16]   *Murray*,

477 U.S. at 488, 106 S.Ct. at 2645.   When a petitioner has failed to

establish adequate cause for his or her procedural default the court need

not go on to also examine the issue of prejudice, since federal habeas

relief is generally unavailable as to procedurally defaulted claims unless

both cause and prejudice are demonstrated.   *Stepney v. Lopes*, 760 F.2d

40, 45 (2d Cir. 1985); *Staley v. Greiner*, No. 01Civ.6165, 2003 WL

470568, at *7 (S.D.N.Y. Feb. 6, 2003) (citing *Stepney*); *Pou v. Keane*, 977

F. Supp. 577, 581 (N.D.N.Y. 1997) (citing *Stepney*) (Kahn, J.).   In such a

case, absent evidence to show the petitioner's innocence of the crime of

conviction, no basis is presented to conclude that the failure to consider

the merits of the federal claim would result in a fundamental miscarriage of

---

[16]      It should be noted, however, that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" *Coleman*, 501 U.S. at 753, 111 S.Ct. at 2566-67 (quoting *Murray*, 477 U.S. at 488, 106 S.Ct. at 2645.

justice, which has been interpreted as amounting to "an unjust incarceration."  *Spence*, 219 F.3d at 170.

Having review the record in this case I find no cause has been offered for petitioner's failure to present the prosecutorial misconduct claim to the Appellate Division, and I therefore need not determine whether prejudice has been established, since a finding of a basis sufficient to overlook a procedural default requires both.  *See Stepney*, 760 F.2d at 45.  Additionally, having reviewed the evidence of petitioner's guilt, I find no basis to conclude that petitioner qualifies for relief under the narrow and demanding actual innocence test.  I therefore recommend that petitioner's prosecutorial misconduct claim be rejected on this procedural basis.[17]

G.    Harsh and Excessive Sentence

Petitioner's fourth ground for habeas relief alleges that the sentence

---

[17]    Although a district court may *sua sponte* raise a petitioner's failure to exhaust as a basis for the denial of federal habeas relief, the federal court must first afford the petitioner notice of the proposed disposition of the claim on procedural grounds, as well as an opportunity to be heard on the issue.  *See Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000) (citing *United States v. Vincent,* 507 F.2d 1309, 1312 (2d Cir. 1974)); *see also King v. Mantello,* No. 98-CV-7603, 2002 WL 32100251, at *15-16 & n.8. (E.D.N.Y. Nov. 19, 2002) (Go, M.J.), *adopted,* 2003 WL 1873618 (E.D.N.Y. Apr. 11, 2003).  Accordingly, if petitioner believes that this claim should not be dismissed as procedurally defaulted, he must raise this contention in timely-filed objections to this report and recommendation.

imposed upon him by the trial court was unduly harsh and excessive.

Specifically, petitioner argues that the trial court failed to consider all of the

relevant factors, including his temperament, mental and physical

condition, past social history, and economic circumstances, prior to

sentencing him to a determinate term of imprisonment of seven years, and

that the imposition of an additional two years due to petitioner's perjury at

trial was both unjustified and unlawful.

This portion of Yates' petition overlooks the firmly established

principle that "[n]o federal constitutional issue is presented where, as here,

the sentence is within the range prescribed by state law." *White v. Keane*,

969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F.

Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see*

*also Jackson v. Lacy*, 74 F. Supp. 2d 173, 181 (N.D.N.Y. 1999) (McAvoy,

C.J. & Smith, M.J.) ("It is well-settled . . . that a prisoner may not challenge

the length of a sentence that does not exceed the maximum set by state

law.") (citing *White*).  Under New York Penal Law §70.02 (3)(a), a

defendant convicted of first degree assault, a class B violent felony, *see*

N.Y. Penal Law § 120.10, may be sentenced to a maximum term of

twenty-five years in prison.  Since the sentence imposed upon him did not

42

go beyond that authorized by statute and Yates does not contend otherwise, this ground cannot afford petitioner the habeas relief he now seeks.

Yates' challenge to his sentence could be viewed as a claim that the sentence imposed constitutes a violation of the Eighth Amendment.  That amendment, however, forbids only extreme sentences which are "grossly disproportionate" to the crime.  *Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S.Ct. 2680, 2701-02 (1991); *Lou v. Mantello*, No. 98-CV-5542, 2001 WL 1152817, at *13 (E.D.N.Y. Sept. 25, 2001) (citing *White*).  Since I cannot find that the sentence imposed on petitioner by Judge Giardino is grossly disproportionate to the crimes committed by the petitioner, I recommend a finding that it does not run afoul of the Eighth Amendment's cruel and unusual punishment provision.

Turning to petitioner's claim that the imposition of a higher sentence to reflect a finding that he had perjured himself at trial was unfair, I note that when a trial court firmly believes the accused to have "testified falsely with the intent of impeding the disposition of the criminal charges, there is no constitutional bar to an enhanced sentence." *United States v. Matos*, 907 F.2d 274, 276 (2d Cir. 1990) (citations omitted).   It is well-established

43

that sentence enhancement based on perjury furthers legitimate sentencing goals. *United States v. Dunnigan*, 507 U.S. 87, 97, 113 S. Ct. 1111, 1118 (1993).  Moreover, petitioner cannot contend that increasing his sentence because of his perjury interfered with his right to testify, since as the Supreme Court has held, a defendant has no protected right to testify falsely. *Id*. (citing, *inter alia*, *United States v. Grayson*, 438 U.S. 41, 54, 98 S. Ct. 2610, 2618 (1978) ("There is no protected right to commit perjury.").

Because Yates has not established that his sentence of incarceration was in violation of his constitutional rights, I recommend that the fourth ground of this petition be denied.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

With the exception of his claim of prosecutorial misconduct, each of petitioner's arguments in support of his request for habaes relief have been presented to but soundly rejected by the state courts.  Having carefully reviewed the determination of the Third Department, the highest New York State court to review petitioner's conviction, I am unable to conclude its findings in connection with any of petitioner's arguments were either contrary to or an unreasonable application of clearly established

Supreme Court precedent.  As to petitioner's claim of prosecutorial

misconduct, based upon the alleged knowing presentment at trial of

fabricated testimony later recanted, I find that the argument was not fairly

presented to the state courts and petitioner is now precluded by

procedural default from now raising that argument.  Accordingly, it is

therefore

     RECOMMENDED, that the petition in this case be DENIED and

DISMISSED in all respects.

     Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within

which to file written objections to the foregoing report.  Such objections

shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS

REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*,

984 F.2d 85 (2d Cir. 1993).

     It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties in accordance with this

court's local rules.

Dated:      June 14, 2007
            Syracuse, NY


David E. Peebles
U.S. Magistrate Judge